# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICKY EDWARD CRUZ, #M-30089, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18−cv–01321−NJR |
| ) | |
| JOHN BALDWIN, ) | |
| LAURA CUNNINGHAM, ) | |
| MARK McFARLAND, ) | |
| WARDEN LAMB, ) | |
| C/O JANA K. CARIE, ) | |
| C/O GOODRUM, ) | |
| C/O McGRATH, ) | |
| C/O McCARTHY, ) | |
| C/O LEONARD, ) | |
| C/O HANSON, ) | |
| C/O JOHN DOE, ) | |
| and DR. AHMED, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court for consideration of the Second Amended Complaint (Doc. 27) filed by Plaintiff Ricky Cruz pursuant to 42 U.S.C. § 1983. This action arises from a serious right leg injury Plaintiff sustained when he fell from a top bunk at Lawrence Correctional Center ("Lawrence") in June 2017. He allegedly received inadequate medical treatment for the injury and developed Methicillin-Resistant Staphylococcus Aureus (MRSA). Plaintiff now brings claims against the defendants under the Eighth Amendment, the Fourteenth Amendment, and Illinois state law. He seeks declaratory judgment, monetary damages, and injunctive relief.[1]

---

[1] Plaintiff specifically seeks a prison transfer, but he offers no reason why the transfer is necessary now or in the future. (Doc. 27, p. 21). Given that his injury and infection were treated in mid-2017, the Court does

The Second Amended Complaint is subject to review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous or malicious, fails to state a claim for relief, or asks for money damages from a defendant who is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations must be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **Second Amended Complaint**

Plaintiff sets forth the following allegations: In May 2017, Plaintiff was assigned a top bunk in Lawrence's A-Wing (8 House). (Doc. 27, pp. 5-22). He informed an unknown officer ("C/O John Doe") about an old head injury and requested a low bunk, but C/O Doe explained that the prison is not ADA-compliant and makes no special accommodations for inmates. (*Id*. at p. 13). On June 16, 2017, Plaintiff fell and injured his right shin while descending from his top bunk. The deep laceration exposed Plaintiff's leg muscle. He repeatedly used the cell's call button to summon help, but C/O John Doe did not respond. (*Id*. at pp. 11-14). The following morning, C/O Leonard agreed to take Plaintiff to the Health Care Unit ("HCU") for treatment but made him walk on his injured leg. Before being examined by medical staff, C/O Carie interviewed Plaintiff for five minutes. The medical staff (Ahmed, McFarland, and Cunningham) then determined that Plaintiff was not a candidate for stitches because of the one-day delay in treatment. They ordered the nursing staff to clean and bandage Plaintiff's wound daily, but the nurses disregarded these orders. (*Id*. at p. 12). For a month or more, Plaintiff complained of flu-like symptoms and difficulty

---

not see why a transfer is necessary. Plaintiff did not to file a separate motion for interim relief that answers this question. The Court thus interprets the transfer request as one for relief at the close of the case. If Plaintiff seeks more immediate relief, he should follow the Court's instructions in Docs. 17, 22, and 26 and file a separate motion under Rule 65(a) or (b) of the Federal Rules of Civil Procedure.

walking to Officers McGrath, Goodrum, Hanson, and McCarthy, but they refused to take him back to the HCU for treatment. (*Id*. at pp. 12, 24-45).

Warden Lamb denied Plaintiff's emergency grievances, and Baldwin, the Director of the Illinois Department of Corrections ("IDOC") concurred with the warden's decision. (*Id*. at p. 13). In late July 2017, Plaintiff was diagnosed with and eventually treated for MRSA. But the incident allegedly left him "scarred for life," resulting in anxiety, depression, and mistrust of the defendants. (*Id*. at p. 14).

## Discussion

Based on the allegations in the Second Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following five counts:

**Count 1:** Eighth and/or Fourteenth Amendment[2] claim against all defendants for delaying or denying Plaintiff medical care for the right shin injury he sustained at Lawrence on or around June 16, 2017.

**Count 2:** Eighth Amendment, Americans with Disabilities Act, and/or Rehabilitation Act claim(s) arising from the denial of a low bunk permit and Plaintiff's assignment to a top bunk at Lawrence.

**Count 3:** Illinois state law claim for intentional infliction of emotional distress against all defendants.

**Count 4:** Illinois claim for *respondeat superior* against John Baldwin.

**Count 5:** Illinois indemnification claim against IDOC and Wexford Health Services under the Illinois Tort Immunity Act, 735 ILCS 10/9-102.

---

[2] Plaintiff brings this claim for the denial of medical care under the Eighth and Fourteenth Amendments. The Eighth Amendment prohibits the cruel and unusual punishment of incarcerated persons and is applicable to the states through the general Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660 (1962). The Court will analyze this claim under the more specific provision, *i.e.*, the Eighth Amendment. *Williams v. Snyder*, 150 F. App'x 549, 552 (7th Cir. 2005) (analyzing claim under most "explicit source[s] of constitutional protection.").

**Any other claim in the Second Amended Complaint that is not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

### Count 1

The Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate the Eighth Amendment when they exhibit deliberate indifference to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). Plaintiff's shin laceration and resulting infection are sufficiently serious to support a claim at this stage against (a) Doe, who failed to respond to Plaintiff's repeated calls for emergency medical care while covering the A-Wing (8 House) on the date of the injury; (b) Ahmed, McFarland, and Cunningham, who ordered the nursing staff to clean and dress Plaintiff's wound daily, in lieu of stitches, and then disregarded his complaints about their failure to do so; and (c) McGrath, Goodrum, Hanson, and McCarthy, who disregarded Plaintiff's requests for medical treatment in June and July 2017. But Count 1 shall be dismissed without prejudice against (a) Leonard, who promptly escorted Plaintiff to the HCU after learning of his injury; (b) Carie, who interviewed Plaintiff for five minutes; (c) Lamb, who denied emergency grievances that are neither described nor clearly identified as exhibits; and (d) Baldwin, who concurred with Lamb's decision.

### Count 2

The Eighth Amendment, the ADA, and/or the Rehabilitation Act claims arising from Plaintiff's denial of a low bunk permit and top bunk assignment do not survive screening. *See*

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

*Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2010) (requiring courts "to analyze a litigant's claims and not just legal theories that he propounds"). Plaintiff identifies no particular individual who was responsible for an Eighth Amendment violation associated with his bed assignment. He alleges that "medical personnel" noted his past head trauma but issued no permits. (Doc. 27, p. 13). Unfortunately, however, "medical personnel" are not named as defendants and are not "persons" subject to suit under Section 1983. Although C/O John Doe denied him a low bunk after Plaintiff informed the officer about his past head injury, the officer had no alleged involvement in the permit decision or bed assignment. As for the statutory claims, the allegations do not suggest that Plaintiff suffered from a disability that required any accommodations.[4] *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012). Count 2 shall be dismissed without prejudice.

### Counts 3, 4, and 5

Plaintiff's remaining claims arise under Illinois state law. This Court has supplemental jurisdiction over the state claims because they involve the same facts as the federal claims. *See* 28 U.S.C. § 1367(a). The Court will therefore consider the merits of Counts 3, 4, and 5.

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Village Orland Park*, 850 F.3d 308 (7th Cir. 2017). Plaintiff

---

[4] The ADA provides that "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. Discrimination under both includes the failure to accommodate a disability. Standing alone, allegations of a past head trauma do not establish the existence of present disability necessitating an accommodation.

impermissibly relies on threadbare recitations of the elements of this cause of action. *Ashcroft v. Iqbal*, 556 U.S.C. 662, 678 (2009); FED. R. CIV. P. 8. He describes the defendants' conduct as "extreme and outrageous" but does not explain why. Further, the allegations do not suggest that the severity of his emotional distress—which includes trust issues, anxiety, and depression—is severe enough to support this claim. *McGreal*, 850 F.3d at 314-15 (citations omitted) ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."). Count 3 shall be dismissed without prejudice.

The *respondeat superior* claim in Count 4 against IDOC Director Baldwin also shall be dismissed. Illinois generally recognizes the *respondeat superior* doctrine. *Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004). It is well settled, however, that "the Eleventh Amendment prohibits a suit in federal court 'in which the State or one of its agencies or departments is named as a defendant.'" *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). This includes "state-law claims brought in federal court under pendent jurisdiction." *Pennhurst State Sch.*, 465 U.S. at 121. The IDOC enjoys immunity from suit in federal court. *Ford v. Lane*, 714 F. Supp. 310, 313 (N.D. Ill. 1989). Although a state may waive Eleventh Amendment immunity, Illinois has only done so for tort suits brought in the Illinois Court of Claims. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (citing 705 ILCS § 505/8(d)). Plaintiff has not named the IDOC in connection with this claim, but he has named its director based solely on his position in the IDOC. This claim is effectively against the State. *See Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016) (citing *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990) ("Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends . . . on the issues involved and the relief sought."). Count 4 shall be dismissed without prejudice to Plaintiff pursuing relief in the Illinois Court of Claims.

Finally, the indemnification claim in Count 5 also shall be dismissed without prejudice. Plaintiff names the IDOC and Wexford in connection with this claim. Unfortunately, however, he neglected to name either as a defendant in the Second Amended Complaint. FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (defendant must be "specif[ied] in the caption"). This claim is considered dismissed without prejudice against both.

### Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with Count 1 against C/O John Doe, but this defendant must be identified with particularity before service of the Second Amended Complaint can be made on him. Plaintiff will have an opportunity to engage in limited discovery to ascertain the identity of this individual. *Rodriguez*, 577 F.3d at 832. The Warden of Lawrence Correctional Center will be added as a defendant, in his or her official capacity only, for purposes of responding to discovery aimed at identifying the unknown defendant. *See* FED. R. CIV. P. 21. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Defendant C/O John Doe is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Second Amended Complaint.

### Pending Motion

Plaintiff's third Motion for Recruitment of Counsel (Doc. 28) is **DENIED** without prejudice. A district court faced with a request for counsel must consider whether the indigent plaintiff made a reasonable attempt to obtain counsel and, if so, whether the plaintiff appears competent to litigate the case himself. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). In support of his motion, Plaintiff describes "repeated" efforts to locate counsel but includes only one letter from an attorney. A single letter does not support a finding that Plaintiff made reasonable efforts to locate counsel. He also cites complex legal issues and a lack of law library access. The Court

notes, however, that this matter now involves one claim. Until now, Plaintiff has demonstrated an ability to litigate this straightforward matter on his own behalf. Other than limitations on his law library access, which he does not describe as unreasonable, Plaintiff points to no impediments to *pro se* litigation (*e.g.*, educational, medical, mental health, or otherwise).

### Disposition

The Clerk is **DIRECTED** to **ADD** the **WARDEN OF LAWRENCE CORRECTIONAL CENTER** (official capacity only), in order to carry out any injunctive relief that is ordered, *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), and to promptly respond to discovery aimed at identifying C/O John Doe with particularity, *Rodriguez*, 577 F.3d at 832.

**IT IS ORDERED** that **COUNT 1** survives screening and is subject to further review against Defendants **DOE, AHMED, McFARLAND, CUNNINGHAM, McGRATH, GOODRUM, HANSON,** and **McCARTHY**. This claim is **DISMISSED** without prejudice for failure to state a claim against Defendants **LEONARD, CARIE, LAMB,** and **BALDWIN** (individual capacity only), and the **CLERK** is **DIRECTED** to **TERMINATE** these defendants.

**IT IS FURTHER ORDERED** that **COUNTS 2, 3, 4,** and **5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, as to **COUNT 1**, the Clerk of Court shall prepare for Defendants **WARDEN OF LAWRENCE CORRECTIONAL CENTER (official capacity only), AHMED, McFARLAND, CUNNINGHAM, McGRATH, GOODRUM, HANSON, McCARTHY,** and **JOHN DOE (once identified):** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 27), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a

Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on C/O John Doe until such time as Plaintiff has identified this individual by name in a motion for substitution. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, if a Defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, that Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendants with particularity. Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his *in forma pauperis* application was granted. 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 29, 2019**

                                                _____
                                                **NANCY J. ROSENSTENGEL**
                                                **United States District Judge**

## Notice

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court**.