# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RICKY EDWARD CRUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:18-CV-1321-MAB |
| | ) | |
| LAURA CUNNINGHAM, | ) | |
| MARK MCFARLAND, | ) | |
| TREVOR GOODRUM, | ) | |
| JAMES HANDON, FAIYAZ AHMED, | ) | |
| JOHN MCGRATH, LEIF MCCARTHY, | ) | |
| and NOLAN THOMPSON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Nolan Thompson (Doc. 101). For the reasons set forth below, the motion is denied.

### BACKGROUND

Plaintiff Ricky Edward Cruz brought this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center. More specifically, he claims that he cut his right shin open when he fell from a top bunk but received inadequate medical treatment for the injury and developed Methicillin-Resistant Staphylococcus Aureus (MRSA).

Following a threshold review of the second amended complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claim:

**Count 1:** Eighth and/or Fourteenth Amendment claim against John Doe, Dr. Faiyaz Ahmed, Mark McFarland, Laura Cunningham, John McGrath, Trevor Goodrum, James Hanson, and Leif McCarthy for delaying or denying Plaintiff medical care for his leg injury.

(Doc. 29). Plaintiff later identified the John Doe Defendant as Nolan Thompson (*see* Docs. 81, 84).

On November 5, 2019, Defendant Thompson filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 101). Defendant Thompson submitted grievance records from the ARB with his motion for summary judgment, as well as, Plaintiff's cumulative counseling summary (Doc. 102-1; Doc. 102-3). He did not, however, submit the grievance records from Lawrence (*see* Doc. 102). Defendant Thompson discussed *five* grievances in his summary judgment brief, which are dated July 3, 2017; July 30, 2017; August 15, 2017; "a grievance regarding medical care [filed] in late 2017 or early 2018";[1] and January 8, 2019 (*Id.* at pp. 2–3). He argued that four of the five grievances do not mention him or his (in)actions (*Id.* at pp. 4–5). Only the July 30th grievance mentions that Plaintiff pressed his emergency call button after falling but received no response (*Id.*). According to Defendant Thompson, Plaintiff included that information for context only and not to

---

[1] This grievance was identified as number 01-18-19 (Doc. 102-1, pp. 64–65). The grievance records from Lawrence that Defendant submitted with his reply brief demonstrate that this grievance was dated Sept. 24, 2017 (Doc. 108-1, pp. 63–64). In this grievance, Plaintiff indicates that he asked the doctor to be tested for both types of the herpes simplex virus (*Id.*). This grievance is plainly unrelated to the Plaintiff's claims in this lawsuit and will not be addressed further.

complain about Thompson's (in)actions; the grievance was really aimed at the purportedly inadequate medical care he was receiving for his leg wound (*Id.*)

It was clear from the records submitted by Defendant—namely the cumulative counseling summary—that there was more to the story than just the five grievances he discussed. For example, the cumulative counseling summary referenced a number of additional grievances that were not discussed by Defendant or contained within the grievance records that he initially submitted (*compare* Doc. 102 *with* Doc. 102-3, p. 5).[2] Plaintiff's complaint and his response to the motion for summary judgment also contained several more grievances related to his leg injury that were not discussed by Defendant nor contained within the grievance records that Defendant initially submitted (Doc. 27; Doc. 104; *see also* Doc. 102; Doc. 102-1; Doc. 102-3).[3] These grievances were also not mentioned in the cumulative counseling summary, even though, notably, at least one of them had been responded to by a counselor.[4] In his response brief, Plaintiff argues he submitted multiple grievances that went unanswered (Doc. 104).

Defendant filed a reply brief, to which he attached the grievance records from Lawrence Correctional Center (Docs. 108, 108-1, 108-2). Defendant addressed each of the

_____

[2] These include an emergency grievance dated June 29, 2017; an emergency grievance dated July 1, 2017; an emergency grievance dated July 2, 2017; an emergency grievance dated July 4, 2017; and a grievance dated July 10, 2017 (Doc. 102-3, p. 5).

[3] These include a grievance dated June 24, 2017; an emergency grievance dated July 5, 2017; a grievance dated July 23, 2017; and a grievance dated July 26, 2017 (Doc. 27; Doc. 104).

[4] For example, the counselor responded to the July 26th grievance, (Doc. 27, pp. 33–34; Doc. 104, pp. 23–24), but that response is not reflected in the cumulative counseling summary (Doc. 102-3).

nine grievances that Plaintiff submitted with his response brief, and argued that none of these grievances was fully exhausted (Doc. 108).

An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on March 4, 2020 (Doc. 126). Plaintiff was the only witness who testified at the hearing.

### LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). First, he had to file a grievance with his counselor within 60 days "after the discovery of the incident, occurrence, or problem that gave rise to the grievance." *Id.* at § 504.810(a). Then, if unsatisfied with the counselor's response, the grievance must be sent to the grievance officer, who submits a written report of their findings and recommendations to the warden within two months, "when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.*

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. ILL. ADMIN. CODE, tit. 20, § 504.840. If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is processed on an

expedited basis. *Id.*

Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB"). ILL. ADMIN. CODE, tit. 20, § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final determination of the grievance. *Id.* at § 504.850(d), (e).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners primarily when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## FACTUAL BACKGROUND

To recap, Plaintiff alleges in the second amended complaint that after he fell and injured his leg on June 16, 2017, he repeatedly pressed the call button in his cell to summon help, but correctional officer Thompson did not respond (Doc. 29; Doc. 27, pp. 11–14).

The records from both parties contain the following grievances regarding Plaintiff's leg injury and subsequent medical treatment:

- **Grievance dated June 24, 2017** (Doc. 104, pp. 4–5, 11–12)

- **Emergency grievance dated July 1, 2017** (Doc. 27, pp. 26–27; Doc 104, pp. 15–16; Doc. 102-3, p. 5; Doc. 108-1, pp. 73–74).
- **Emergency grievance dated July 2, 2017** (Doc. 102-3, p. 5; Doc. 108-1, pp. 75–76)
- **Emergency grievance dated July 3, 2017** (Doc. 102–1, pp. 84–86; Doc. 102-3, p. 5; Doc. 104, pp. 17–18)
- **Grievance dated July 10, 2017** (Doc. 27, pp. 31–32; Doc. 104, p. 20; Doc. 102-3, p. 5; *see also* Doc. 108-1, p. 71).
- **Grievance dated July 26, 2017** (Doc. 27, pp. 33–34; Doc. 104, pp. 23–24).
- **Grievance dated July 30, 2017** (Doc. 27, pp. 35–36; Doc. 104, pp. 25–26; *see also* Doc. 102, p. 3).
- **Grievance dated August 15, 2017** (Doc. 102–1, pp. 66–71; Doc. 108-1, p. 68).
- **Grievance dated January 8, 2019** (Doc. 102-1, pp. 17–19).

The Court also notes that the records submitted by the parties contain or reference three other grievances that may be relevant to the exhaustion issues at hand, but the Court is unable to conclusively say.

- **Emergency grievance dated June 29, 2017**: The cumulative counseling summary indicates that the counselor received this grievance on June 30th and forwarded it to the warden (Doc. 102-3, p. 5). This grievance does not appear to be contained in the records, and there is no indication as to what it was about or how it was handled by the warden.
- **Emergency grievance dated July 4, 2017:** The cumulative counseling summary indicates that the counselor received this grievance regarding medical treatment on July 5th and forwarded it to the warden (Doc. 102-3, p. 5). This grievance does not appear to be contained in the records, and it is unclear if Plaintiff ever received a decision from the warden.
- **Emergency grievance dated July 5, 2017** (grievance number E593)**:** This grievance is attached to Plaintiff's complaint and included in his response brief (Doc. 27, pp. 28; Doc. 104, p. 19). It is also reflected in the grievance log submitted by Defendant, (Doc. 108-2), but does not appear to be contained within the institution's grievance records (*see* Doc. 108-1). Plaintiff check-marked the box indicating that this grievance was about medical treatment, however, the body of the grievance is illegible. It was deemed a non-emergency by the warden on July 12th. It is not clear whether Plaintiff ever received the warden's response or did anything more with this grievance.

Finally, the records contain at least four complaints from Plaintiff about his grievances going unanswered. While the substantive part of these complaints may not pertain to the incident at hand, they are still useful because they shed light on issues with the grievance process at Lawrence during the relevant time period.

- **Grievance dated June 26, 2017** (grievance number 08-17-82): In this grievance, which was filed ten days after Plaintiff injured himself, Plaintiff complains that grievances he filed in May and June regarding issues with his legal mail and "about medical also" have not been answered (Doc. 102-1, pp. 74–76; Doc. 108-1, pp. 82–83; Doc. 108-2). The counselor received the grievance on June 29th and responded July 5th, stating "issue has been investigated and CHAMP entries on grievances received by Clinical Services printed and presented to the [inmate]." Despite the counselor's response, this grievance is not reflected in the cumulative counseling summary (*see* Doc. 102-3, p. 5). Plaintiff went on to fully exhaust this grievance.
- **Grievance dated June 28, 2017:** In this grievance, Plaintiff complains that he has been "putting in request slip after request slip since 6/21/17 6/22/17 all the way to 6/28/18" about a skin infection on his lower stomach that has been recurring since he was first incarcerated (Doc. 102-3, p. 5; Doc. 104, p. 13). The counselor received the grievance on July 1st, responded on July 13th, and returned the grievance to Plaintiff "via institutional mail." There is no indication whether Plaintiff received the response or took any further steps to exhaust this grievance.
- **Grievance dated July 23, 2017:** In this grievance, Plaintiff complains that he sent "a couple of request slips" regarding his ongoing medical situation to "(Director) Laura Cunningham," but he's yet to receive any response (Doc. 104, p. 22). There is no record of this grievance in the documents submitted by Defendant (*see* Doc. 102-1; Doc. 102-3; Doc. 108-1; Doc. 108-2).
- **Letter dated October 2, 2017:** This letter was addressed to the IDOC Director and included in the ARB's records (Doc. 102-1, pp. 72–73). In the letter, Plaintiff complains that he is receiving inadequate medical care and his grievances about the situation are going unanswered.

The Court has extensively reviewed the grievance records submitted by both parties. This review shows that there are only two grievances that potentially cover Plaintiff's claim against Defendant Thompson: the grievance dated June 24th and the grievance dated July 30th.

In the **grievance dated June 24, 2017**, Plaintiff states, in pertinent part, that he fell off the top bunk on June 16th and injured his leg (Doc. 104, pp. 4–5, 11–12). He pressed the emergency call button but no one responded. He saw the inmate porter and asked the ported to get the officer on duty. An unknown correctional officer then came to his cell, looked at his leg, and said "give me a minute I'll be back." However, the officer never returned. In the section of the grievance designated "Relief Requested," Plaintiff wrote "I need treatment. I don't want my leg to get infected." Plaintiff testified that he submitted this grievance by dropping it into the grievance box at Lawrence; that was how he submitted all of his grievances. He further testified that he submitted this grievance to his counselor but never received a response (*see also* Doc. 104, p. 5).

In the grievance dated **July 30, 2017**, Plaintiff gives a chronology of events related to his leg wound (Doc. 27, pp. 35–36; Doc. 104, pp. 25–26). He states, in pertinent part, that he injured himself on June 16th and hit the emergency button in his cell but no staff responded. In the section of the grievance designated "Relief Requested," Plaintiff wrote "I want blood tests to find out what infection has spread from inadequate medical care and I would like for someone to look into medical here at Lawrence Correctional Center." The counselor received the grievance on July 31st and responded on August 18th, indicating it was a duplicate of the July 26th grievance.[5] Despite the counselor's response to the grievance, there is no mention of or reference to this grievance in the cumulative

---

[5] The July 26th grievance complains about the medical treatment Plaintiff was receiving for his leg injury. *See supra* p. 7.

counseling summary (*see* Doc. 102-3, p. 5). Plaintiff testified that he forwarded it to the grievance officer, but never got a response (*see also* Doc. 104, p. 4).

D<span style="font-variant:small-caps">ISCUSSION</span>

As previously noted, only two grievances in the record include a complaint about a correctional officer ignoring Plaintiff's requests for medical attention on June 16, 2017: the June 24, 2017 grievance and July 30, 2017 grievance. Plaintiff claimed in his response brief that he submitted both the June 24th and July 30th grievances but never received responses. His story remained consistent at the evidentiary hearing. He was composed and candid. There were no apparent internal inconsistencies in his story, nor was his story inherently implausible. In fact, his story was bolstered by numerous other grievances that he submitted during the relevant time period in which he complained that his grievances were not being responded to. In short, his testimony was presumptively credible.

Defendant argued in his brief and at the hearing that there is no proof these grievances were submitted. They are not listed on the grievance log, contained in the grievance records, or mentioned in the cumulative counseling summary (Doc. 108). However, there a careful review of the records produced by Defendant casts doubt on their reliability at this stage of the litigation. For example, Plaintiff submitted a copy of the July 30th grievance that contained a response from his counselor (Doc. 104, pp. 25–26). Despite the counselor's response, this grievance is *not* reflected in the cumulative counseling summary (*see* Doc. 102-3, p. 5). As another example, the cumulative counseling summary contains a note on June 30, 2017, indicating that the counselor

received an emergency grievance dated June 29th and forwarded it to the warden (Doc. 102-3, p. 5). However, the prison had no record of that grievance in its own file (*see* Doc. 108-1). These internal inconsistencies are conspicuous and important when, as is the case here, the Court must resolve a swearing contest. Given the holes in the prison's records, the fact that the prison has no documented record of the June 24th or July 30th grievances does little, if anything, to undermine Plaintiff's story that he filed the grievances but never received any responses.

The Court finds that Plaintiff's testimony, which was largely uncontroverted and bolstered by the record, to be credible. The Court therefore concludes the grievance process was rendered unavailable to Plaintiff with respect to the June 24th and July 30th grievances and he is deemed to have exhausted these two grievances. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.").

Defendant Thompson argues that even if the grievances are deemed exhausted, they are still insufficient to cover Plaintiff's claims against him (Doc. 102; Doc. 108). Specifically, he argues that neither grievance clearly describe him, request any relief against him, or contain any allegations of wrongdoing on his part (Doc. 102, Doc. 108). Defendant Thompson claims Plaintiff was not actually complaining about the officer's (in)actions, and Plaintiff only provided the information about the officer for context; his

complaint, and the relief he wants, is actually aimed at the medical care received after the fall (Doc. 102, p. 3; Doc. 108, p. 5).

The Court is unpersuaded by Defendant's argument. Plaintiff *did* describe the officer at he alleges to be at fault in his grievances as a correctional officer whose name Plaintiff did not know who "worked the core on R8-AL-15[6] on June 16, 2017" during the "3:PM-11:PM shift" (Doc. 104, pp. 11, 12). Plaintiff also included allegations of wrongdoing by the officer, namely that the officer ignored Plaintiff's injury and pleas for help. The simple fact that Plaintiff did not request any relief specific to the officer, does not mean that his grievance did not include a complaint against the officer. The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). In his grievances, Plaintiff described the officer, what he purportedly did wrong, as well as the location, the date, and the time of the incident. Therefore, these grievances can only fairly be read to include a complaint about the officer's (in)actions.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Nolan Thompson (Doc. 102) is **DENIED.**

---

[6] The Court believes this is the location Plaintiff wrote in his grievance, but the handwriting in the Court's copy of the grievance is very faint and difficult to read (Doc. 104, p. 11-12).

The discovery deadline remains set for August 7, 2020, and dispositive motions are due September 8, 2020 (Doc. 98).

**IT IS SO ORDERED.**

**DATED: March 5, 2020**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**